UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

MACARIO GILBERTO REYES-HERRERA,

                Plaintiff,

    v.
                               **DECISION AND ORDER**

JASON J. FLAITZ,                    6:19-CV-06257-MAT
BARBARA M. CROSBY,
and MARCI A. TRIMBLE,

                Defendants.

_____

## <u>INTRODUCTION</u>

Plaintiff Macario Gilberto Reyes-Herrera ("Plaintiff") brings this action against defendants Jason J. Flaitz, Barbara M. Crosby, and Marci A. Trimble (collectively, the "Defendants"), alleging violations of 42 U.S.C. § 1983. Docket No. 1.

Presently before the Court is Defendants' motion to dismiss Plaintiff's complaint for failure to state a claim, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, and for a stay of discovery. Docket No. 13. For the reasons set forth below, Defendants' motion is denied.

## <u>BACKGROUND</u>

The following allegations, which the Court accepts as true when considering Defendants' motion to dismiss, are taken from Plaintiff's complaint (Docket No. 1). Plaintiff's complaint stems from his arrest on June 29, 2017, during a routine traffic stop while Plaintiff was traveling to work. Docket No. 1 at ¶ 3.

Plaintiff is a citizen of Mexico and "presents as Hispanic and a person of color," and was living in Penn Yann, New York, at the time of his arrest. *Id*. at ¶¶ 2, 5, 6. Plaintiff moved to the United States in 1991 to work as a farm worker, and has three children, all of whom are United States citizens. *Id*. at ¶ 12.

On June 29, 2017, Plaintiff was traveling to work in Jerusalem, New York, as a passenger in a truck. *Id*. at ¶ 16. He was traveling with two co-workers, Daniel Blauvelt and Hector Virgilio Aguilar-Valdez. *Id*. Mr. Blauvelt, who "presents as Caucasian and is English speaking," was driving the vehicle. *Id*. at ¶¶ 18, 19. Defendant Flaitz, a New York State Trooper, stopped the truck for Mr. Blauvelt's failure to wear a seatbelt. *Id*. at ¶ 18. Mr. Aguilar-Valdez, who presents as Hispanic and speaks primarily Spanish, also was not wearing a seatbelt. *Id*. at ¶¶ 20, 21. Officer Flaitz issued Uniform Traffic Tickets to Mr. Blauvelt and Mr. Aguilar-Valdez for not wearing their seatbelts. *Id*. at ¶ 21. Plaintiff, who was wearing his seatbelt, was not ticketed. *Id*.

During the encounter, defendant Flaitz approached the vehicle and asked Mr. Blauvelt for his driver's license, which Mr. Blauvelt provided. *Id*. at ¶ 22. Defendant Flaitz did not ask Mr. Blauvelt any further questions. *Id*. at ¶ 23. Defendant Flaitz began walking back to his vehicle, but before reaching it, turned around and approached the truck for a second time. *Id*. at ¶ 24.

Defendant Flaitz questioned Plaintiff and Mr. Aguilar-Valdez regarding their names and identification, and asked these questions in an "abrupt and threatening manner." *Id*. at ¶¶ 25, 26. Plaintiff answered defendant Flaitz's questions regarding his name and address. *Id*. at ¶ 27. Neither Plaintiff, nor Mr. Aguilar-Valdez, revealed their immigration status to defendant Flaitz. *Id.* When defendant Flaitz asked Plaintiff and Mr. Aguilar-Valdez for identification, they responded that they did not have identification on them, and Plaintiff informed defendant Flaitz that he had left his New York State driver's license in his vehicle, which was parked at his place of employment. *Id*. at ¶ 28.

Defendant Flaitz went back to his vehicle, and remained there for approximately five to ten minutes. *Id*. at ¶ 29. During that time, three more New York State Trooper vehicles arrived on scene, including defendant Crosby, who also was employed as a New York State Trooper. *Id*. at ¶¶ 8, 29.

Defendant Flaitz returned to the truck and issued Mr. Blauvelt two Uniform Traffic Tickets, including one for failing to wear and seatbelt and one for operating a truck with an out-of-class license. *Id*. at ¶ 30. Defendant Flaitz then ordered Plaintiff and Mr. Aguilar-Valdez out of the truck, without indicating a reason for doing so. *Id*. at ¶ 31. The men cooperated and exited the vehicle. *Id*. Defendant Flaitz called Customs and Border Patrol ("CBP") and gave the phone to Plaintiff, to speak with CBP Agent

Julio Leon-Gonzalez in Spanish.  *Id*. at ¶ 32.  Plaintiff did not
disclose his immigration status to the agent.  *Id*. at ¶ 33.  After
speaking with Agent Leon-Gonzalez, Plaintiff returned the phone to
defendant Flaitz.  *Id*. at ¶ 34.

According to the incident report prepared by defendant Flaitz,
he contacted defendant Trimble, a Sergeant for the New York State
Police, who advised him to take Plaintiff into state custody.  *Id*.
at ¶¶ 9, 35.  Defendant Crosby placed Plaintiff in handcuffs and
put him in her vehicle.  *Id*. at ¶ 36.  Mr. Aguilar-Valdez was also
arrested.  *Id*.

The incident report labels the incident as "Immigration - Non-
Criminal Investigation," and states that defendant Flaitz detained
Plaintiff as an illegal entrant, in violation of 8 U.S.C. § 1325,
"Improper Entry by an Alien."  *Id*. at ¶¶ 37, 38.  At the time of
Plaintiff's arrest, none of the defendants had any evidence of
Plaintiff's immigration status.  *Id*. at ¶¶ 38, 39.  Rather, the
only information Defendants had was that Plaintiff "appeared
Hispanic and primarily spoke Spanish."  *Id*. at ¶ 40.  Defendants
Flaitz and Crosby did not inform Plaintiff of the reason for his
arrest, nor did they read him his Miranda rights.  *Id*. at ¶ 45.

Plaintiff alleges that defendant Flaitz "conducted the
improper investigation as to [Plaintiff's] immigration status
pursuant to a personal animus against immigrants and Hispanics."

*Id*. at ¶ 41. The complaint contains the following three allegations regarding defendant Flaitz:

> 42. On November 24, 2018, Officer Flaitz posted a video to his personal Facebook page depicting refugees along the Mexican-Guatemalan border titled, "#Refugee #Invasion." A Facebook friend commented on the video on Officer Flaitz's Facebook page, "That chopper should have just fucken shot every one of them fucken assholes." Officer Flaitz liked this comment. Upon information and belief, this indicates his endorsement of the message.
>
> 43. On December 16, 2018, Officer Flaitz made a status on his personal Facebook page titled, "History Lesson on Your Social Security Card," where he accused immigrants of taking public benefits away from American citizens without "paying a dime."
>
> 44. On February 11, 2019, Officer Flaitz shared and voiced his agreement with a video from Breitbart endorsing the building of the wall along the southern border and blaming the drug crisis in the United States on immigrants.

*Id*. at ¶¶ 42-44.

Defendant Crosby transported Plaintiff to the police barracks in Dundee, New York. *Id*. at ¶ 46. Plaintiff was "handcuffed to a desk alone in a room," and was never charged with a crime, nor issued a ticket. *Id*. at ¶ 47. Plaintiff alleges that during this time he suffered severe emotional distress. *Id*. at ¶ 48. While in custody, Plaintiff called his oldest son to pick him up from the station. *Id*. at ¶ 49. Plaintiff was released from custody before his son arrived. *Id*. at ¶ 50. Upon release, Plaintiff was questioned regarding his immigration status by Agent Leon-Gonzalez, who was waiting for him in the parking lot at the police barracks.

*Id.* at ¶ 51.  At that time, Plaintiff admitted that he did not have legal status in the United States.  *Id.*  Plaintiff was arrested and taken to the Rochester CBP office and fingerprinted.  *Id.* at ¶¶ 51, 52.  The fingerprint identification system revealed that Plaintiff had previously been deported from the United States in 2006.  *Id.* at ¶ 52.

Plaintiff was charged with violation of 8 U.S.C. § 1326(a), unlawful re-entry of a previously deported or removed alien.  *Id.* at ¶ 53.  The affidavit in support of the criminal complaint "indicate[d] that Officer Flaitz contacted CBP to assist with two subjects in a traffic stop."  *Id.* at ¶ 54.  Plaintiff also alleges that the accounts prepared by defendant Flaitz and CBP regarding when they became aware of Plaintiff's immigration status are inconsistent:

> 55.  While the incident report prepared by Officer Flaitz indicated that CBP knew of [Plaintiff's] immigration status at the time of the traffic stop, the affidavit in support of CBP's criminal complaint indicates that [Plaintiff] asserted his right to withhold his immigration status from Agent Leon Gonzalez and CBP did not know [Plaintiff's] immigration status until after he was released from New York State custody.

*Id.* at ¶ 55.

In January 2018, Plaintiff was deported to Mexico after being sentenced to time served.  *Id.* at ¶ 56.  Plaintiff alleges that he "is unable to find work in Mexico and is in poor health."  *Id.* at ¶ 57.  His children, who are United States citizens, remain in the

United States, and one child is still a minor. *Id*. at ¶ 58. The children are "struggling emotionally and financially in dealing with the absence of their father." *Id*.

Plaintiff further alleges that Defendants violated New York State Trooper Policy, Executive Memorandum 14-48, which "forbids state officers from using resources to detect and apprehend aliens suspected or wanted merely for violating civil immigration offenses." *Id*. at ¶ 62. Executive Memorandum 14-48 provides that state officers do not have authority to inquire into a passenger's immigration status during a traffic stop, unless there is a reason to believe that the passenger is involved in criminal activity or has committed an infraction. *Id*. at ¶ 63. Executive Memorandum 14-48 also provides that a state officer does not have the authority to take police action solely because a person is an "illegal alien," including identifying, questioning, and detaining that person. *Id*. at ¶ 64. Plaintiff alleges that defendants Flaitz, Crosby, and Trimble's actions violated Executive Memorandum 14-48. *Id*. at ¶¶ 65-69.

Plaintiff alleges causes of action of false arrest (against all Defendants) and Equal Protection (against defendant Flaitz). *Id*. at 9-11, ¶¶ 70-82.

## PROCEDURAL HISTORY

Plaintiff filed his complaint on April 5, 2019, alleging causes of action for false arrest and violation of the Equal

-7-

Protection clause, in violation of 42 U.S.C. § 1983. Docket No. 1. Defendants filed an answer on June 19, 2019. Docket No. 6. On August 19, 2019, the Court issued a scheduling order, requiring that Defendants file their motion to dismiss no later than September 13, 2019. Docket No. 12.

Defendants' filed their motion to dismiss on September 13, 2019. Docket No. 13. Plaintiff filed response papers on October 11, 2019. Docket No. 16. The motion is ready for a decision. *See* Docket No. 18.

## DISCUSSION

## I. Standard

To withstand a Rule 12(b)(6) motion to dismiss, the complaint must plead facts sufficient "to state a claim for relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id*. Thus, "[w]here a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Id.* (internal citations and quotation marks omitted).

Determining whether a complaint meets the plausibility standard is "context-specific" and requires that the court "draw on its judicial experience and common sense." *Id.* at 679.

The Court notes that Defendants have styled their motion a "Motion to Dismiss For Failure to State a Claim," brought pursuant to Fed. R. Civ. P. 12(b)(6). *See* Docket No. 13. The Federal Rules of Civil Procedure provide that such a motion "must be made before pleading if a responsive pleading is allowed." *See* Fed. R. Civ. P. 12(b). Defendants filed an answer on June 19, 2019, prior to filing the instant motion to dismiss. *See* Docket No. 6. In their answer, Defendants assert seven affirmative defenses, including failure to state a claim and that they are entitled to qualified immunity. *See id.* at 3. Accordingly, their motion is technically one for judgment on pleadings. *See U.S. v. Pelt,* No. 11-cv-06156(ADS), 2013 WL 1173898, at *2 (E.D.N.Y. Mar. 18, 2013) ("Though the Defendant has styled her motion as a motion to dismiss under Rule 12(b), because the Defendant filed an answer before filing her motion to dismiss, the motion must be deemed a motion for judgment on the pleadings pursuant to Rule 12(c)."); *Doe v. Barrett*, No. 3:01cv519(PCD), 2006 WL 3741825, at *3 (D. Conn. Dec. 19, 2006) ("where a defendant files an answer before a motion to dismiss, federal courts are free to treat the motion to dismiss as a motion for judgment on the pleadings."). A motion for judgment on the pleadings is evaluated pursuant to the same standard as a motion to dismiss. *See Bank of N.Y. v. First Millennium, Inc.*, 607 F.3d 905, 922 (2d Cir. 2010) ("The same

standard applicable to Fed. R. Civ. P. 12(b)(6) motions to dismiss applies to Fed. R. Civ. P. 12(c) motions for judgment on the pleadings."). Accordingly, Defendants' motion is converted to one for judgment on the pleadings, but the Court evaluates it pursuant to the same standard as a motion to dismiss.

## II. __Defendants' Motion is Denied__.

Defendants contend that Plaintiff's complaint should be dismissed because Plaintiff's § 1983 claims are barred by the Supreme Court case of *Heck v. Humphrey*, which held that a plaintiff asserting a false arrest claim must show that the underlying criminal case was terminated in his favor. *See* Docket No. 13-1 at 5. In the alternative, Defendants contend that they are entitled to qualified immunity. *Id.* at 6. Defendants also request a stay of discovery. *See* Docket No. 13.

### A. __Plaintiff's False Arrest Claim__

To state a claim for false arrest, a plaintiff must allege the following: "'(1) the defendant intended to confine the plaintiff, (2) the plaintiff was conscious of the confinement, (3) the plaintiff did not consent to the confinement and (4) the confinement was not otherwise privileged.'" *Hernandez v. United States*, 939 F.3d 191, 199 (2d Cir. 2019) (quoting *McGowan v. United States*, 825 F.3d 118, 126 (2d Cir. 2016)).

Defendants contend that Plaintiff cannot state a claim for false arrest because he does not plead that his conviction was invalid. *See* Docket No. 13-1 at 5-6. To that end, pursuant to the Supreme Court case of *Heck v. Humphrey*, "in order to recover

damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus[.]" *Heck v. Humphrey*, 512 U.S. 477, 486-87 (1994). In response, Plaintiff argues that the Second Circuit has repeatedly held that claims for unlawful arrest do not fall within the *Heck* rule, as "'[a] wrongful arrest claim, like many Fourth Amendment claims, does not inevitably undermine a conviction because a plaintiff can wage a successful wrongful arrest claim and still have a perfectly valid conviction.'" *See* Docket No. 16 at 10 (quoting *Covington v. City of N.Y.*, 171 F.3d 117, 123 (2d Cir. 1999)).

The Court agrees with Plaintiff. Defendants misconstrue the allegations contained in Plaintiff's complaint. Plaintiff does not challenge the validity of his arrest by CBP and his subsequent criminal conviction for unlawful re-entry. Indeed, Plaintiff alleges that he "admitted to Agent Leon-Gonzalez that he did not have legal status in the United States." Docket No. 1 at ¶ 51. Rather, as is made clear by his complaint, Plaintiff challenges the arrest made by the state police defendants. *See id.* at ¶ 37 ("[Defendants] had no evidence of illegal activity when they arrested [Plaintiff], as he was not driving and was wearing his seat belt."); *id.* at ¶ 39 ("[Defendants] did not have any evidence

of [Plaintiff's] immigration status when they arrested him, as he asserted his right to withhold this information from them.").

Plaintiff alleges that the arrest made by CBP - not the state police defendants - resulted in his criminal conviction. *See id*. at ¶¶ 50, 51 ("[Plaintiff] was . . . released from New York State custody before his son arrived to come pick him up," and "[u]pon release, [Plaintiff] exited the police barracks and was immediately questioned as to his immigration status by Agent Leon-Gonzalez, who was waiting for him in the parking lot of the New York State Police barracks."); *id*. at ¶ 55 ("the affidavit in support of CBP's criminal complaint indicates that [Plaintiff] asserted his right to withhold his immigration status from Agent Leon Gonzalez and *CBP did not know [Plaintiff's] immigration status until after he was released from New York State custody*.") (emphasis added). Per the allegations in the complaint, the evidence on which Plaintiff's conviction for unlawful re-entry is based was obtained by CBP after his arrest by Defendants, to whom he did not disclose his immigration status. *See id.* at ¶ 39 (Plaintiff asserted his right to withhold information regarding his immigration status from Defendants); *c.f. id.* at ¶ 51 ("It was not until [the confrontation with CBP Agent Leon-Gonzalez] that [Plaintiff] admitted . . . that he did not have legal status in the United States. Agent Leon-Gonzalez then arrested [Plaintiff.]"). *See Covington*, 171 F.3d at 123 (a plaintiff may have a successful wrongful arrest claim, but have a valid conviction, "if there were independent evidence upon which a conviction could be obtained that was not in any way

tainted by the unlawful arrest."). Accordingly, Plaintiff's false arrest claim is not barred by *Heck*. *See Fifield v. Barrancotta*, 353 F. App'x 479, 480-81 (2d Cir. 2009) ("Fourth Amendment claims for unlawful arrest . . . do not ordinarily fall within the *Heck* rule, since a finding for the plaintiff would not necessarily demonstrate the invalidity of any outstanding criminal judgment against the plaintiff, at least unless the conviction was dependent on evidence obtained as a result of the arrest.") (internal quotations and citation omitted); *Colon v. City of Rochester*, No. 17-CV-6160L, 2019 WL 6629276, at *5 (W.D.N.Y. Dec. 6, 2019) ("The Second Circuit has held . . . that in some circumstances success on a false arrest claim would not necessarily imply the invalidity of a conviction resulting from the criminal proceedings instituted against the plaintiff based on the arrest."); *Glasgow v. Beary*, 2 F. Supp. 3d 419, 426-27 (E.D.N.Y. 2014) (*Heck* doctrine did not apply, where the plaintiff's Section 1983 suit "d[id] not call into question a *criminal* conviction.").

As explained above, Plaintiff challenges the validity of his arrest by the state police defendants - not his arrest by CBP and the resulting criminal conviction. He has alleged, in detail, that the evidence supporting his criminal conviction is separate from any information possessed by the state police defendants at the time of his arrest. Accordingly, Defendants' motion to dismiss Plaintiff's claim for false arrest due to Plaintiff's failure to plead that his criminal conviction is invalid and accordingly, is denied.

**B.    Qualified Immunity**

"Qualified immunity shields public officials, including police officers, from an action for civil damages, to the extent that their challenged acts do not violate 'clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Williams v. Goodfriend*, 347 F. Supp. 3d 169, 180 (W.D.N.Y. 2018) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)); *see also McGowan*, 825 F.3d at 118 ("The doctrine of qualified immunity protects government officials from liability for civil damages unless a plaintiff pleads facts showing (1) that the official violated a statutory or constitutional right, and (2) that the right was clearly established at the time of the challenged conduct.") (internal quotations and citation omitted). "A clearly established right is one that is sufficiently clear that every reasonable official would have understood that what he is doing violates that right. . . .  We do not require a case directly on point, but existing precedent must have placed the statutory or constitutional question beyond debate." *Mullenix v. Luna*, 136 S. Ct. 305, 308 (2015) (internal quotations and citations omitted). "An official is therefore entitled to immunity if his action was 'objectively legally reasonable in light of the legal rules that were clearly established at the time it was taken.'" *Taravella v. Town of Wolcott*, 599 F.3d 129, 133 (2d Cir. 2010) (quoting *X-Men Security, Inc. v. Pataki*, 196 F.3d 56, 66 (2d Cir. 1999)).

Defendants advance two arguments in support of their position that they are entitled to qualified immunity: (1) they did not

violate a clearly established right, and (2) they had arguable probable cause to arrest Plaintiff for suspected criminal activity, based on the totality of the circumstances. Docket No. 13-1 at 11. Defendants' first argument - that Plaintiff does not allege a violation of a clearly established constitutional right - is meritless. Plaintiff plainly alleges that Defendants violated his right to not be arrested, absent probable cause. *See, e.g.,* Docket No. 1 at ¶ 71 ("Defendants had neither cause to arrest [Plaintiff] nor legal cause or excuse to seize and detain him."). "[I]t has long been clearly established that an arrest without probable cause is a constitutional violation." *Robison v. Via*, 821 F.2d 913, 921 (2d Cir. 1987); *Lee v. Sandberg*, 136 F.3d 94, 102 (2d Cir. 1997) ("The right not to be arrested without probable cause is a clearly established right."). *See also Harewood v. Braithwaite*, 64 F. Supp. 3d 384, 399 (E.D.N.Y. 2014) ("Where, as here, the right to be free from unlawful arrest and [the defendant's] violation of such right are already established, qualified immunity turns only on the second prong of the qualified immunity analysis, *i.e.*, whether an objectively reasonable officer faced with the same factual scenario as [the defendant] would have known that arresting [the plaintiff] violated [the plaintiff's] right to be free from arrest without probable cause.").

Defendants argue that Officer Flaitz was permitted to question Plaintiff and ask him to produce identification during the traffic stop, and his belief that he was able to request this information was reasonable. *See* Docket No. 13-1 at 13-14. However, the crux

of Plaintiff's complaint is not a challenge to defendant Flaitz's request for Plaintiff's name and identification. Rather, Plaintiff challenges Defendants' disparate treatment of Plaintiff based on his ethnicity, as well as Defendants' taking him into custody, despite the fact that they had no evidence that Plaintiff had committed a crime. Accordingly, as the facts are alleged by Plaintiff in his complaint, Defendants violated a clearly established constitutional right; that is, his right not to be arrested, absent probable cause. Defendants' motion to dismiss the complaint on this ground is therefore denied.

With regard to Defendants' latter argument that they had arguable probable cause to arrest Plaintiff, the Court is cognizant that "the existence of probable cause is an absolute defense to a false arrest claim and affords the arresting officer qualified immunity from litigation." *Caldarola v. Calabrese*, 298 F.3d 156, 161 (2d Cir. 2002). Accordingly, the Court "must determine whether a reasonable officer could conclude that the circumstances here established the necessary probable cause for [Defendants] to arrest [Plaintiff]; in short, [the Court] must consider whether a reasonable officer could have believed that the specific action[s] taken by [Defendants] w[ere] foreclosed by clearly established law." *Id*. "The qualified immunity test is an objective one. [I]f officers of reasonable competence could disagree as to whether probable cause existed, immunity should be recognized." *Zellner v. Summerlin*, 494 F.3d 344, 367 (2d Cir. 2007) (internal quotations and citations omitted) (alteration on original); *see also Daniels*

*v. D'Aurizo*, 564 F. Supp. 2d 194, 199 (W.D.N.Y. 2008) ("With respect to claims relating to false arrest, an arresting officer is entitled to qualified immunity if: (a) it was objectively reasonable for the officer to believe that probable cause existed, or (b) officers of reasonable competence could disagree on whether the probable cause test was met.").

Plaintiff alleges, in detail, that the only information known to Defendants at the time of Plaintiff's arrest was the following: Plaintiff presented as Hispanic and primarily spoke Spanish; he was traveling as a passenger in a truck with two other men, both of whom were not wearing seatbelts; Plaintiff's name and address, which he disclosed in response to questioning by defendant Flaitz; and that Plaintiff had left his driver's license in his vehicle, parked at his place of employment. *See* Docket No. 1 at ¶¶ 16, 20, 21, 27, 28. Plaintiff was taken into custody for illegal entry based on those facts, alone. *Id*. at ¶¶ 35-40. *See Loria v. Gorman*, 306 F.3d 1271, 1291-93 (2d Cir. 2002) (affirming district court's denial of qualified immunity to defendant officer, where the information he had at the time of the plaintiff's arrest, which supported only the conclusion that vehicle collision was "a simple traffic accident," was not sufficient to support charges for reckless endangerment or criminal mischief).

The circumstances of Plaintiff's arrest, as they are alleged in the complaint, do not establish that Defendants had arguable

probable cause to arrest Plaintiff.[1]  Defendants have not provided

controlling authority standing for the proposition that a

reasonable officer, knowing only what Defendants knew about

Plaintiff at the time of his arrest, could have believed that he

had arguable probable cause to arrest Plaintiff.  For example,

Defendants cite *Estrada v. Rhode Island*, where the First Circuit

Court of Appeals held that an officer was entitled to qualified

immunity for Plaintiffs' claims that they were detained for

immigration offenses without probable cause.  *See* Docket No. 13-1

at 17.   However, in *Estrada*, the arresting officer possessed

additional information regarding a potential criminal offense -

namely, an admission that the plaintiffs were in the country

illegally.  See *Estrada v. Rhode Island*, 594 F.3d 56, 65 (1st Cir.

2010) ("By the time that Officer Chabot demanded that Plaintiffs

follow him to the ICE Providence office, two Plaintiffs had

essentially admitted on their behalf and on the behalf of the rest

of the passengers, that they were in the country illegally. . . .

we are compelled to find that a reasonable defendant in Officer

Chabot's position would have believed he had sufficient evidence

giving rise to probable cause to support the conclusion that the

---

[1]

The complaint further includes allegations that Defendants deliberately violated New York State Trooper Policy; that is, Executive Memorandum 14-48, "which forbids state officers from using resources to detect and apprehend aliens suspected or wanted merely for violating civil immigration offenses."  Docket No. ¶ at 62; *see also id*. at ¶¶ 63-69.  Plaintiff contends that this policy further supports his contention that Defendants could not have reasonably believed that their arrest of Plaintiff was lawful.  *See* Docket No. 16 at 21 ("Not only does the Constitution, the Supreme Court, and the Second Circuit confirm a person's established right to not be arrested without probable cause, the defendants' state trooper policy, which governs a state trooper's scope of duties, neither authorizes a state trooper to arrest without probable cause nor authorizes a state trooper to arrest individuals for civil immigration offenses.").

van's occupants had committed immigration violations."). Conversely, Plaintiff asserts that Defendants arrested him when they had "no evidence of illegal activity," *see* Docket No. 1 at ¶ 37, and he has provided specific allegations supporting this assertion, including that he did not disclose his immigration status during the duration of the traffic stop.

"Whether a defendant officer's conduct was objectively reasonable is a mixed question of law and fact." *Zellner*, 494 F.3d at 367. Whether Plaintiff can substantiate his allegations remains to be seen; however, Defendants are not entitled to qualified immunity and therefore dismissal of Plaintiff's complaint at this stage of the litigation. *See McKenna v. Wright*, 386 F.3d 432, 436 (2d Cir. 2004) (on 12(b)(6) motion, "the plaintiff is entitled to all reasonable inferences from the facts alleged, not only those that support his claim, but also those that defeat the immunity defense.").

## C. **Plaintiff's Equal Protection Claim**

Although they ask the Court "for judgment dismissing the Complaint in its entirety," *see* Docket No. 13 at 1, Defendants do not make any specific argument as to why dismissal of Plaintiff's Equal Protection claim, brought against defendant Flaitz, is warranted.

The Court has reviewed the allegations contained in Plaintiff's complaint and concludes that he has stated a claim for violation of the Equal Protection clause. To state a claim for violation of the Equal Protection clause, a plaintiff must allege

"that he was treated differently than others similarly situated as a result of intentional and purposeful discrimination." *Phillips v. Girdich*, 408 F.3d 124, 129 (2d Cir. 2005). Plaintiff has alleged that he is Hispanic and a member of a suspect class, and that he was treated differently than Mr. Blauvelt during the traffic stop as a result of his race. *See* Docket No. 1 at ¶ 5 (Plaintiff is a citizen of Mexico, and presents as Hispanic and a person of color); *id*. at ¶¶ 19, 24-29 (defendant Flaitz prolonged the questioning of only Plaintiff and Mr. Aguilar-Valdez, not Mr. Blauvelt, who presents as Caucasian and is English-speaking); *id*. at ¶¶ 27, 31, 32 (Although Plaintiff did not disclose his immigration status to defendant Flaitz, defendant Flaitz ordered Plaintiff and Mr. Aguilar-Valdez out of the truck and called CBP); *id*. at ¶ 38 ("The incident report states that Officer Flaitz detained [Plaintiff] as an illegal entrant in violation of 8 U.S.C. § 1325, 'Improper Entry by an Alien.' However, Officer Flaitz made no attempt to discern the manner in which [Plaintiff] entered the United States and [Plaintiff] did not inform Officer Flaitz how he entered the United States."); *see also id.* at ¶¶ 77-82. Further, Plaintiff alleges that defendant Flaitz conducted an improper investigation against him due to "a personal animus against immigrants and Hispanics," and he provides specific examples from defendant Flaitz's social media pages supporting this assertion. *See id.* at ¶¶ 41-44. In other words, Plaintiff alleges that defendant Flaitz arrested him because he is Hispanic, rather than the fact that he had probable cause to believe that Plaintiff was

in the United States illegally. Plaintiff's allegations are sufficient to state a claim for violation of the Equal Protection clause against defendant Flaitz.

### D. **Defendants' Request for a Stay of Discovery**

Defendants also request a stay of discovery. *See* Docket No. 13. In response, Plaintiff argues that a stay is not appropriate, as Defendants have already filed an answer, and Plaintiff's discovery demands are minimal. *See* Docket No. 16 at 25-26. Plaintiff represents that discovery requires only "the scheduling of a few depositions and minimal document production." *Id.* at 26.

Defendants filed their answer to Plaintiff's complaint on June 19, 2019. Docket No. 6. Thereafter, on June 20, 2019, the undersigned referred the case to the Honorable Jonathan W. Feldman, United States Magistrate Judge for, among other things, supervision of discovery. Docket No. 7. Plaintiff submitted his Discovery Plan on August 8, 2019 (Docket No. 10), and Judge Feldman held a scheduling conference with counsel on August 14, 2019 (Docket No. 11). The Scheduling/Case Management Order setting deadlines for factual discovery, amendment of the complaint, disclosure of experts, dispositive motions, and trial-related conferences and filings, was filed on August 19, 2019. Docket No. 12. Almost one month later, on September 13, 2019, Defendants filed the instant motion seeking a stay of discovery. Docket No. 13. Despite the fact that they filed an answer and the case has proceeded towards

discovery, Defendants do not explain why a stay of discovery would be appropriate. *See* Docket No. 13-1.

"A district court has discretion to stay discovery pursuant to Rule 26(c) of the Federal Rules of Civil Procedure, upon a showing of good cause." *Mirra v. Jordan*, No. 15-CV-4100(AT)(KNF), 2016 WL 889559, at *2 (S.D.N.Y. Mar. 1, 2016) (citing *Hong Leong Finance Limited v. Pinnacle Performance Limited*, 297 F.R.D. 69, 72 (S.D.N.Y. 2013)). "In determining whether good cause exists for a stay of discovery, three factors are considered: (1) the strength of the dispositive motion; (2) the breadth of the discovery sought; and (3) the prejudice a stay would have on the non-moving party." *Lithgow v. Edelmann*, 247 F.R.D. 61, 62 (D. Conn. 2007). "'The party seeking a stay of discovery bears the burden of showing good cause. The pendency of a dispositive motion is not, in itself, an automatic ground for a stay.'" *Mirra*, 2016 WL 889559, at *2 (quoting *Morien v. Munich Reinsurance America, Inc.*, 270 F.R.D. 65, 66-67 (D. Conn. 2010)).

The Court has considered the three factors and finds that a stay of discovery is not warranted. As is evident by its ruling on the instant motion, Defendants' motion to dismiss is unsupported. Plaintiff has plainly stated a claim for violation of his constitutional rights, and dismissal of the case is not appropriate at this stage of the litigation. Further, as offered by Plaintiff, the breadth of discovery sought - "a few depositions and minimal document production" - is not burdensome. *See Mirra*, 2016 WL 889559, at *2 (the plaintiff's 119 document demands were not

voluminous and burdensome). With regard to prejudice, Defendants filed their answer almost nine months ago, and discovery deadlines are in place. This case is ready to proceed to the discovery phase of litigation, and Defendants have failed to offer any reason why that should not occur. The Court has found that Plaintiff's complaint should not be dismissed, discovery should proceed, in accordance with the above-mentioned scheduling orders. Defendants' motion for a stay of discovery is denied.

## CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss Plaintiff's complaint is denied. Defendants' motion for a stay of discovery is also denied.

**ALL OF THE ABOVE IS SO ORDERED.**

S/Michael A. Telesca
_____
HONORABLE MICHAEL A. TELESCA
United States District Judge

Dated:     February 20, 2020
           Rochester, New York